

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY CO., <br><br>Plaintiff and Counter Defendant, <br><br>vs. <br><br>TOLTZ, KING, DUVALL, ANDERSON AND ASSOCIATES, INC., <br><br>Defendant and Counter Claimant, | CV 16–24–M–DLC <br><br>ORDER |
| TOLTZ, KING, DUVALL, ANDERSON AND ASSOCIATES, INC., <br><br>Third Party Plaintiff, <br><br>vs. <br><br>SAFE HARBOR ACCESS SYSTEMS, LLC; SAFE HARBOR ACCESS SYSTEMS II, LLC; SAFE HARBOR ACCESS SYSTEM Ii, a/k/a SAFE HARBOR Ii, <br><br>Third Party Defendants. | |

Before the Court is Third Party Defendant Safe II's motion for summary judgment.[1] For the reasons explained below, the Court denies the motion.

---

[1] Defendant and Counterclaimant Tolz, King, Duvall, Anderson and Associates, Inc. will be referred to as "TKDA"; Plaintiff and Counter-defendant BNSF Railway Co. will be referred to as "BNSF"; Third Party Defendants Safe Harbor Access Systems, LLC, and Safe Harbor Access

## BACKGROUND AND PROCEDURAL HISTORY

This case involves TKDA's alleged duty to indemnify BNSF for claims arising out of an accident that occurred in 2011 involving a BNSF employee who was injured while working on a fuel unloading dock at the BNSF railroad yard in Whitefish, Montana. On August 23, 2001, BNSF and TKDA entered into a non-exclusive contract in which TKDA agreed to provide engineering services necessary for the completion of work defined by BNSF (hereafter referred to as the "2001 Agreement"). (Doc. 27-1). Pursuant to the 2001 Agreement, TKDA was to indemnify and hold BNSF harmless for "any claims arising from the performance of th[e] Agreement." The contract also included the following choice of law provision: "All questions arising under this Agreement shall be decided according to the laws of the State in which the work is performed." (Doc. 27-1 at 11.) The 2001 Agreement was renewed in 2003, 2004, 2005, 2006, 2008, and January 21, 2009, which was the final renewal of the 2001 Agreement. (Docs. 39-1, 39-2, 39-3, 39-4, 39-5, 39-6.)

In 2002, pursuant to the 2001 Agreement, TKDA agreed to engineer a fuel

---

Systems II, LLC, will be referred to as "Safe I" and "Safe II," respectively. Safe I and Safe II have joined in TKDA's motion for partial summary judgment regarding the invalidity of indemnity and release of claims provisions. (Docs. 46, 47.)

unloading facility at the BNSF railway yard in Whitefish, Montana. TKDA contracted to provide an elevated walkway for top-unloading tank cars with retractable gangways and new fuel unloading arms at the two tank car unloading locations. TKDA purchased supply equipment for the two gangway platforms from Safe I. These platforms were designed to allow BNSF employees to access the tops of tank cars and had an integrated fall protection system that would retract with the walkway in order to provide a safety barrier.

The remaining facts regarding the contractual relationship between BNSF and TKDA will not be restated here, since the Court has already ruled on that issue in its previous order on BNSF and TKDA's cross motions for summary judgment. (*See* Doc. 75.) The Court found that TKDA was still liable because the indemnity clause in the contract between BNSF and TKDA was valid and enforceable. Here, Safe II argues that it is entitled to summary judgment on all claims because the undisputed facts show that Safe II had no contract with TKDA and is not liable in tort for common law contribution or indemnity as it relates to TKDA's responsibilities to indemnify BNSF in the underlying personal injury case.

Safe I is no longer in existence because of a judicial foreclosure by one of its creditors, National Loan Investors, L.P. ("NLI"). NLI was the successful bidder at the sale for the assets, plant, and equipment of Safe I. NLI's bid and

interest was then assigned and sold in 2007 to Southeastern Realty, LLC, which, in turn, leased the assets, plant, and equipment and intangibles to Safe II after it was formed in May 2007. Thus, TKDA and Safe II are disputing whether Safe II assumed the contract and indemnity liabilities of Safe I.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255).

Because jurisdiction over this action is founded upon diversity of

citizenship, the Court applies the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Cos.*, Inc., 306 F.3d 806, 812 (9th Cir.2002). "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir.1980). Federal courts "are bound by the pronouncements of the state's highest court on applicable state law." *Appling v. State Farm Mutual Auto. Ins. Co.*, 340 F.3d 769, 778 (9th Cir.2003) (quoting *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir.2001)).

## ANALYSIS

In its opening brief, Safe II argues that (1) Safe II and TKDA never contracted together so there can be no breach of contract, (2) there is no proof by TKDA that Safe II ever assumed the contractual liabilities of Safe I, (3) Safe II cannot be a joint tortfeasor for any underlying tort action because Safe II was not in existence at the time the gangways were installed, and (4) Safe II cannot be liable because of the statute of repose. In its response, TKDA contends that Safe II impliedly assumed the contract-based liabilities of Safe I and is therefore liable for indemnification. Even if Safe II did not assume the contractual liabilities of

Safe I, TKDA asserts that Safe II is liable under agency and identity theories and also liable for successor liability based on the continuity of enterprise theory. Finally TKDA argues that the statue of repose does not apply because of the existence of a written contract between Safe I and TKDA.

The Court will address each theory of liability separately below.

## I. Whether Safe II Impliedly Assumed Contractual Liabilities of Safe I

TKDA first argues that fact issues exist as to whether Safe II impliedly assumed the contract liabilities of Safe I. TKDA contends that because (1) Safe II assumed and completed pending Safe I work orders, (2) Safe II paid the obligation of Safe I's vendors over time, (3) Safe II assumed customer complaints and warranty issues of Safe I, (4) Safe II accepted Safe I's contract receivables, (5) Safe II assumed responsibility for responding to BNSF's service call about the Fox incident, and (6) Safe II paid an insurance deposit to restore the Safe I plant facility building that was damaged in a tornado, that Safe II impliedly assumed all contract liabilities of Safe I. Safe II maintains that because no contract existed between Safe I and Safe II, and Safe II never explicitly or impliedly assumed the contract liabilities of Safe I, that Safe II cannot be liable for breach of contract.

"[T]he assignee of a contract [is] generally not held liable for the assignor's breach of contract." *Cuchine v. H.O. Bell, Inc.*, 682 P.2d 723, 725 (Mont. 1984)

(citations omitted). "Under certain circumstances an assignee has been held to have impliedly assumed the contractual obligations of the assignor." *Massey-Ferguson Credit Corp. v. Brown*, 567 P.2d 440, 443 (Mont. 1977). If there "is no express assumption of the underlying agreement, a consideration of all the facts [may] compel the inference that the defendant assumed the conditions of the [assignor]." *Id.* The obligation can be expressly assumed in writing, or by implication where the assignee's conduct manifests an intent to become bound. *Id.*

There is no dispute that a contract did not exist between Safe II and TKDA. Thus, Safe II could not have explicitly assumed the contract liabilities of Safe I. However, Safe II has presented six different situations that may be sufficient to prove that Safe II implicitly assumed the contract liabilities of Safe I. Safe II did not respond to this argument. Consequently, the facts and circumstances here surrounding Safe II's actions—especially since TKDA alleges that Safe II assumed Safe I's work orders, contract receivables, and vendor warranties—could put Safe II in a position of more than a mere purchaser of Safe I's assets. However, this is fact-intensive inquiry for the jury. Thus, there still exists a genuine issue of material fact as to whether Safe II implicitly assumed the contract liabilities of Safe I. In regards to this theory of liability, Safe II's motion will be

denied.

## II. Whether Safe II is Liable Under Agency and Identity Theories

Next, TKDA contends that Safe II is the "agent" or "alter ego" of Safe I, and thus Safe II remains liable for Safe I's negligence. Safe II argues that it cannot be an agent or alter ego of Safe I because they never existed at the same time, and were not principal and agent corporations or parent and subsidiary corporations.

"An agent is one who represents another, called the principal, in dealings with third persons." Mont. Code Ann. § 28–10–101 (2015). Agency is either actual or ostensible. Mont. Code Ann. § 28–10–103 (2015). "An agency is actual when the agent is really employed by the principal. An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent when that person is not really employed by the principal." *Id.* Agency can also be created "by a precedent authorization or a subsequent ratification." *Fitterer Sales Montana, Inc. v. Mullin*, 358 P.3d 885, 889 (Mont. 2015) (quoting Mont. Code Ann. § 28–10–103).

Further, if corporation is controlled by another, it may be considered to be an alter ego of the parent corporation and a principal-agent relationship may exist. "A subsidiary corporation may be the mere agent of a parent company for a particular transaction if the parent company exercises control over the conduct and

activities of the subsidiary so that in effect the subsidiary is merely acting on behalf of the parent." *Hando v. PPG Indus., Inc.*, 771 P.2d 956, 960 (Mont. 1989). "[T]he corporate cloak will not be cast aside under either an agency or an alter ego theory unless it appears 'not only that the corporation is controlled and influenced by one or a few persons, but, in addition . . . that the corporate cloak is utilized as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud.'" *Thornock v. Pack River Mgmt. Co.*, 740 P.2d 1119, 1121 (Mont. 1987) (quoting 18 C.J.S., Corporations, sec. 6, p. 378).

The Court finds that neither a principal-agent nor a parent-subsidiary relationship existed between Safe I and Safe II. The timing of the formation of these two companies defeats this theory of liability. Safe I and Safe II were never in existence at the same time. It is undisputed that Safe II was not operational until after the judicial foreclosure of Safe I in 2007. Safe I could never have acted on behalf of Safe II because Safe II did not exist at any point in time when Safe I was in business. Therefore, there is no way Safe II could be in control as a principal or parent company over Safe I as the agent or subsidiary company. Therefore, TKDA's theory of liability through a principal-agent or alter ego relationship is unavailing.

### III. Whether Safe II has Successor Liability Under the Continuity of Business Exception

Third, TKDA argues that Safe II was a mere continuation of Safe I and thus the continuity of enterprise theory of liability applies. Safe II contends that because Safe II only purchased the assets of Safe I, and Safe II has different owners than Safe I, this theory does not apply.

The general rule is that an entity that purchases only the assets of another corporation is not responsible for the debts and liabilities of the company unless the purchasing company expressly assumed those debts. *In case of mere purchase or acquisition of another company's property—In general*, 15 Fletcher Cyc. Corp. § 7122 (2017). Under the continuity of enterprise exception, "[a] successor corporation can be liable for the debts of its predecessor, if it is merely a continuation or reincarnation of the first corporation." *Buck v. Billings Montana Chevrolet, Inc.*, 811 P.2d 537, 543 (Mont. 1991). "[H]owever, before a corporation can be deemed a successor, certain showings must be made. *Id.* (citing 19 Am. Jur. 2d § 2711). This "require[s] evidence of one or both of the following factual elements: (1) a lack of adequate consideration for acquisition of the former corporation's assets to be made available to creditors, or (2) one or more persons were officers, directors, or shareholders of both corporations."

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1150 (9th Cir. 2004); *Buck*, 811 P.2d at 543 ("For example, it is generally required that the plaintiff establish that insufficient consideration ran from the new company to the old and that only one corporation existed at the completion of the transfer.").

TKDA contends that Safe II only paid $1.5 million for the assets of Safe I but that Safe I had been encumbered by $7.5 million in debt, which raises a fact question about the adequacy of consideration paid. (Doc. 85 at 18.) Safe II claims that this argument fails because during a regularly conducted foreclosure sale, the highest bidding price is considered a "fair price" received for the property so long as the state's requirements for conducting a foreclosure sale were met. (Doc. 92 at 5, n. 1); *see also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 541–542 (1994). TKDA has not established that there is a genuine issue of material fact regarding the price paid for Safe I's assets at the foreclosure sale. TKDA's assumption that the price paid versus the debt encumbered is somehow unfair is not enough to overcome summary judgment. Thus, there is no factual dispute regarding insufficient consideration for the purchase of Safe I's assets.

Although Montana has not explicitly accepted the second element for determining successor liability, the Ninth Circuit and many other jurisdictions

have done so.² Thus, out of abundance of caution, the Court will also analyze this factor. This element requires that one or more persons were officers, directors, or shareholders of both corporations. There is no dispute that William Calloway and Bert Montague own Safe II and that neither were owners, directors, or shareholders of Safe I. They were merely business consultants of Safe I during the foreclosure process. Thus, because Safe I and Safe II have no commonality of owners, directors or officers, Safe II cannot be a considered a mere continuation of Safe I based on this element.

Consequently, TKDA's theory of liability under the continuity of business enterprise exception is without merit.

## IV. Statue of Repose

Finally, Safe II argues that regardless of the theory of liability, Safe II cannot be liable because of the statute of repose. Under Montana Code Annotated § 27–2–208, actions for damages arising out of work on improvements to real property may not be commended more than 10 years after the competition of the

---

² *See, e.g., Katzir's*, 394 F.3d 1143; *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 440 (7th Cir. 1977) ("The key element of a 'continuation' is a common identity of the officers, directors and stockholders in the selling and purchasing corporations."); *Harris v. T.I., Inc.*, 243 Va. 63, 70, 413 S.E.2d 605, 609 (1992) ("A common identity of the officers, directors, and stockholders in the selling and purchasing corporations is the key element of a 'continuation.'").

improvement. Mont. Code Ann. § 27–2–208 (2015). However, this statute does not apply to an action upon "any contract, obligation, or liability founded upon an instrument in writing." Mont. Code Ann. § 27–2–208(1). There is no dispute that TKDA and Safe I had a written contract regarding the parts that Safe I manufactured and sold to TKDA for the gangway. Thus, because the Court found above that there still exists a genuine issue of material fact as to whether Safe II implicitly assumed the contractual obligations of Safe I, the statute of repose would not apply since a written contract existed between Safe I and TKDA.

Accordingly, IT IS ORDERED that Safe II's motion for summary judgment (Doc. 64) is DENIED.

DATED this 20th day of June, 2017.

Dana L. Christensen, Chief Judge
United States District Court